MCALLISTER TOWING & TRANS-PORTATION CO., INC., McAllister Brothers, Inc., Petitioners–Cross–Respondents,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent–Cross–Petitioner.

Nos. 04–1569, 04–2358.

United States Court of Appeals, Second Circuit.

Nov. 30, 2005.

Raymond G. McGuire, Laura L. Putney, Kauff McClain & McGuire, New York, NY, for Petitioners–Cross–Respondent.

Anne Marie Lofaso, Senior Attorney, Julie B. Broido, Supervisory Attorney (Arthus F. Rosenfeld, General Counsel, John E. Higgings, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, on the brief), National Labor Relations Board, Washington, DC, for Respondent–Cross–Petitioner.

PRESENT: OAKES, STRAUB, and RAGGI, Circuit Judges.

## SUMMARY ORDER

Petitioners McAllister Towing & Transportation Co. and McAllister Brothers, Inc. (collectively, "McAllister") petition for review of a decision by the National Labor Relations Board ("Board") 1) affirming a determination by the Administrative Law Judge ("ALJ") that McAllister violated the National Labor Relations Act ("Act") by using coercion to win a representation election against Local 333 of the AFL–CIO ("Union"), 2) ordering McAllister to cease its violation, and 3) ordering that a notice of violation be posted, mailed to employees, and read out loud to employees by a Board agent. We assume the parties' familiarity with the facts, decision below, and issues on appeal.

On March 31, 1999, the Board's General Counsel ("General Counsel") issued a complaint against McAllister. McAllister filed answers denying virtually every allegation in the complaint, including allegations acknowledged in related proceedings. A hearing was scheduled for July 14, 1999. In the lead-up to that hearing, General Counsel served McAllister with subpoenas duces tecum and McAllister petitioned the ALJ to revoke the subpoenas, arguing that they were burdensome and/or irrelevant. The morning before the hearing, in a conference call, the ALJ informed the parties that she would rule on McAllister's petition the next day and that McAllister should "be in a position to substantially comply ... at the opening of the hearing" with the subpoenas as modified (if at all). *McAllister Towing & Transp. Co.*, 341 NLRB 48, 2004 WL 436561, at *19 (2004).

On the morning of the hearing, the parties entered into stipulations in which McAllister withdrew a number of its defenses and, as a result, General Counsel

withdrew many of its subpoena requests. Based primarily on the stipulations, the ALJ granted in part and denied in part McAllister's petition to revoke the subpoenas, and ordered McAllister to comply immediately with the remainder. Counsel for McAllister ("counsel") replied that he would "consult with our client with respect to the specific items in the subpoena and we will advise you about how promptly, I will comply as promptly as possible." After further discussion, General Counsel moved for sanctions on the ground that McAllister apparently had made no effort even to begin complying with the subpoenas. The ALJ granted General Counsel's motion in part. Specifically, she permitted General Counsel to prove by secondary evidence those issues to which the subpoenas related and precluded McAllister from rebutting that evidence, but she refused General Counsel's request that she limit McAllister's right of cross examination or draw all inferences in General Counsel's favor.

After trial, in a recommended decision and order dated Dec. 29, 2000, the ALJ found that McAllister violated the Act by granting certain benefits near to the time of the election—namely, a wage increase, pension plans and paid vacation days—and recommended a bargaining order remedy. McAllister appealed to the Board, and the Board affirmed in part by divided opinion. Specifically, the Board affirmed the ALJ's findings of violations but, rather than imposing the recommended bargaining order, simply required that employees be notified of McAllister's violations. This petition and cross-application followed.

■ We review the ALJ's decision to impose discovery sanctions for abuse of discretion, and under this deferential standard we affirm that decision. The record reflects that, despite being warned to be ready to "substantially comply," McAllister made virtually no efforts even to begin gathering the required documents—many of which ought to have been readily available—by the July 14, 1999 hearing. Board and circuit precedent support the imposition of sanctions in such circumstances. *See Atlantic Richfield Co. v. U.S. Dept. of Energy*, 769 F.2d 771, 794–95 (D.C.Cir. 1984); *Bannon Mills, Inc.*, 146 NLRB 611, 633–35 (1964). We also affirm, under the same standard, the scope of the sanctions imposed by the ALJ. *See Perdue Farms, Inc., Cookin' Good Div. v. NLRB*, 144 F.3d 830, 834 (D.C.Cir.1998) ("The preclusion rule, we have said, prevents the party frustrating discovery from introducing evidence in support of his position on the factual issue respecting which discovery was sought.... Once a party's challenge to a subpoena has been rejected ... the party cannot pick and choose which parts ... it will obey and which parts it can ignore." (internal citations and quotation marks omitted)).

■ McAllister also argues that, even accepting the evidentiary constraints imposed by the ALJ, the evidence presented did not support the ALJ's finding that the wage increase, implemented in early June, 1997, and made retroactive to June 1 was intended to influence the July 2, 1997, election. We review the Board's affirmance for substantial evidence. 29 U.S.C. § 160(e); *NLRB v. Katz's Delicatessen, Inc.*, 80 F.3d 755, 763 (2d Cir.1996). As the D.C. Circuit explained in *Perdue Farms, Inc., Cookin' Good Div.*, the Act:

prohibit[s] conduct immediately favorable to employees which is undertaken with the express purpose of impinging upon their freedom of choice for or against unionization and is reasonably calculated to have that effect.... [A]s a general rule, an employer's legal duty in deciding whether to grant benefits while a representation proceeding is pending is to decide that question pre-

cisely as it would if the union were not on the scene.

144 F.3d at 836 (citations and quotation marks omitted).

The parties agree that McAllister had a general plan to increase wages (because employees were leaving to work for competitors), and that McAllister provided one increase, effective January 6, 1997, with plans to consider further increases in six months' time. Based on the testimony of one supervisor, the ALJ found that McAllister accelerated this increase to influence the election. When asked "why did you make the decision to grant the across-the-board wage increases [in June]," the supervisor testified that "there was a lot of pressure on us to make sure this election was a favorable outcome.... [W]e sort of looked at it that our jobs were in jeopardy ... if we didn't win this election."

McAllister asserts here that, contrary to the ALJ's finding, the wage increase was originally scheduled to occur immediately *before* the election, and therefore that the facts of this case take it outside the *Perdue Farms* line of cases. Although there may be some uncertainty as to whether the original plan was to raise wages on July 1, 1997, or on some later date, this issue is immaterial. The supervisor's testimony provided substantial evidence for the ALJ's finding that McAllister violated the Act—either by timing the wage increase to create a favorable impression or by timing it to avoid an unfavorable one.

For these reasons, the petition for review is DENIED and the cross-application for enforcement is GRANTED.